IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN SECURITY & AUDIO VIDEO SYSTEMS, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | CASE NO. 5:21-cv-1416 |
| v. | ) ) ) | JUDGE SARA LIOI |
| RONALD BAXTER, *et al.*, | ) ) | |
| Defendants. | ) ) | |
| | | |
| RONALD BAXTER, | ) ) | |
| Plaintiff, | ) ) ) | CASE NO. 5:21-cv-2230 |
| v. | ) ) ) | JUDGE SARA LIOI |
| FRANK BAXTER, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

## DECLARATION OF FRANK BAXTER

I, Frank Baxter, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am over the age of 18 and am competent to testify to the matters stated herein.

2. I am President of American Security & Audio Video Systems, Inc. ("ASAV") and President of ASAV subsidiary American-Securicom, Inc. ("Securicom"). I am also a member of Baxter Property Management, LLC ("BPM").

3. ASAV is an Ohio corporation that provides integrated electronic security and audio video systems for residential homes, commercial businesses, and government properties. Securicom is an ASAV subsidiary specializing in residential home security. BPM is a property

management company that owns the real estate utilized by ASAV and Securicom to conduct their business.

4. I have been a director, 50% shareholder, and President of ASAV since December 2011.

5. My brother, Ronald Baxter ("Ronald"), was Vice-President of ASAV from December 2011 until December 2018.

6. In addition to formerly serving as an ASAV employee and officer, Ronald is also a director and shareholder of ASAV. Ronald has never resigned as an ASAV director and has never divested himself of his ASAV shares.

7. Ronald's duties to ASAV are memorialized in his December 14, 2011 Employment Agreement with the company. A true and accurate copy of that agreement is attached hereto as **Exhibit A**.

8. In pertinent part, the Employment Agreement prohibited Ronald – during the term of his employment and shareholder relationship with ASAV and for seven years thereafter – from competing with ASAV in the business of selling, engineering, designing, installing, servicing, maintaining and/or monitoring of electronic systems. The Employment Agreement also required Ronald to return all company property received during the term his employment "on termination or on request" in "as good condition as when received by Employee."

9. In December 2018, Ronald voluntarily stepped down as Vice President of ASAV and became President of newly acquired ASAV subsidiary Securicom.

10. Ronald proved unable to effectively manage Securicom, and voluntarily left the company in May 2019. Prior to leaving ASAV/Securicom, Ronald frequently acknowledged that his actions were hurting the company. He even admitted that he blamed me for these failures

because he didn't really understand business. A true and accurate copy of one such communication left by Ronald on my desk is attached hereto as **Exhibit B**.

11. One of the greatest acts of harm that Ronald caused to ASAV occurred in the spring of 2019 when ASAV lost its largest client, Geis Construction Company ("Geis"). Specifically, on May 7, 2019, I learned for the first time that Geis would no longer be doing business with ASAV through a third party. I was completely shocked by this news, since I had never received a phone call, email, or letter from anyone at Geis explaining this decision. I subsequently learned that Ronald had been in communication with Geis and was aware that Geis would no longer be working with ASAV, but had failed to inform me about this potentially company-killing news for approximately two months until after I confronted him about it. When I confronted Ronald about the loss of the Geis account, he claimed that he didn't tell me about this critical information because he "didn't know how to talk to me." I also learned that Ronald had been exchanging text messages on his ASAV-issued cell phone with Greg Geis, President of Geis Construction, in March 2019 but never informed me about these communications. A true and accurate log from ASAV's cell phone provider showing the date and time of Ronald's text messages with Greg Geis in March 2019 is attached hereto as **Exhibit C**.

12. Ronald's communications with Geis are particularly concerning to me since Ronald did not have any responsibility for the Geis Construction account at ASAV and, as president of our subsidiary Securicom, he would not have had any legitimate reason to be communicating with Geis about its ASAV account.

13. Due to Ronald's interference with the Geis account and his failure to promptly advise me of Geis's apparent decision to sever its relationship with ASAV, ASAV was unable to recover its relationship with Geis Construction and has suffered significant financial loss.

14. After I learned about Ronald's surreptitious communications with Geis Construction, Ronald left Securicom and terminated his employment relationship with the company on May 29, 2019. I thereafter assumed the role of President of Securicom.

15. Shortly after leaving ASAV and Securicom, Ronald (through his wife, Andrea) filed articles of incorporation for a new entity called "Complete Systems Integration, LLC" ("CSI"). The articles of incorporation filed for CSI with the Secretary of State are attached hereto as **Exhibit D**. As stated in the Articles of Incorporation, CSI was formed to provide essentially the same services as ASAV.

16. I have since learned that after forming CSI, Ronald had started working for one of ASAV's direct competitors, Zenith Systems, LLC ("Zenith"). At the time Ronald began working for Zenith (which I have since learned was in August-September 2019), Ronald was an ASAV director and shareholder and remained bound by his December 14, 2011 Employment Agreement.

17. Ronald did not seek or obtain ASAV's permission to work for a direct competitor at or around the time he started working for Zenith. In fact, I first learned of Ronald's employment with Zenith after speaking with a third-party in October 2019.

18. ASAV and Zenith compete in the same market and provide many of the same services, including but not limited to integrated electronic and security systems for commercial and governmental properties. ASAV and Zenith have also served several of the same clients, including University Hospitals, Geis Construction Company, and Cleveland Construction Company, among others.

19. I have learned from documents produced during discovery in this case that Zenith (in concert with another former ASAV employee who is now working for Zenith, Ernest J. Sigler) solicited Ronnie in August 2019 for the express purpose of "rebuilding" Zenith's AV

(audio video) division, which competes directly with ASAV. In particular, I am now aware that on September 3, 2019, Zenith Vice President Al Bristo wrote to Ronald claiming, "Im [sic] sure you will [sic] your worth especially as we rebuild the department." A copy of this email, in the form it was produced to me by Zenith during the state court phase of this litigation (bates stamped Zenith_00002), is attached hereto as **Exhibit E**.

20. At the same time that he was working to start a competing business and taking steps to join a direct competitor, Ronald still had possession of his ASAV issued Apple iPhone and Dell laptop computer, which he had retained without permission after leaving ASAV/Securicom. By failing to return these items following his departure from the companies, Ronald again breached his December 14, 2011 Employment Agreement, which required him to return all company property previously issued to him upon termination of employment.

21. Ronald's company-issued cell phone and computer contained highly sensitive and confidential information about ASAV's and Securicom's clients, products, services, business operations, and technical systems. This data included ASAV's customer lists (with customer phone numbers and email addresses), customer contracts (with associated service fees, installation costs, materials lists, invoices, payment histories, payment methods, credit terms, and contract renewal dates), software programs licensed to ASAV, confidential programming information for customer systems, lists of company vendors, the company's credit terms, material costs, labor costs, pricing structure methods, marketing strategies, and bidding formulas and computations.

22. Additionally, Ronald regularly used his ASAV-issued cell phone to communicate with clients and third parties about ASAV's and Securicom's business. Indeed, I understand Ronald's ASAV-issued phone was his primary cell phone during his employment with the company (and apparently, for several months thereafter).

23. In an effort to retrieve these items and to prevent Ronald from utilizing them for his own personal or business activities, ASAV's former legal counsel, Terry Link, Esq., sent correspondence to Ronald's then-attorney, Peter Nealis, Esq., on September 5, 2019 demanding that Ronald stop using and return his ASAV cell phone and laptop computer. A true and accurate copy of this correspondence is attached hereto as **Exhibit F**.

24. As shown on **Exhibit F**, Attorney Link demanded that Ronald return the cell phone and computer after Ronald, through his own legal counsel, threatened "to assert the remedies available to him as a minority shareholder" in the event our then ongoing settlement discussions were not fruitful.

25. Ronald did not return his ASAV issued cell phone or laptop in response to Attorney Link's September 5, 2019 demand.

26. Two months later, on November 5, 2019, ASAV's counsel again wrote to counsel for Ronald and demanded that Ronald return his company issued laptop and cell phone. A true and accurate copy of this correspondence is attached hereto as **Exhibit G**.

27. On November 18, 2019, Attorney Nealis responded to Attorney Link and advised that Ronald would be dropping by Attorney Nealis's office the following day, November 19, to (among other things) "return company property." A true and accurate copy of this email is attached hereto as **Exhibit H.**

28. Ultimately, Ronald did not turn over any ASAV property, including the company's cell phone and computer, for surrender to ASAV on November 19, 2019 as previously represented.

29. On November 25, 2019, ASAV's counsel again wrote to Ronald's counsel to demand (for the third time) that Ronald "immediately discontinue use of all Company property

and return it to the Company no later than Monday, December 2, 2019." A true and accurate copy of this correspondence is attached hereto as **Exhibit I**.

30. Again, Ronald refused to return his company issued laptop and cell phone as requested.

31. Knowing that Ronald had illicitly retained ASAV/Securicom property and was now working for a direct competitor, ASAV caused its attorneys to make another formal demand for Ronald to return this property in December 2019. A true and accurate copy of the December 13, 2019 letter from ASAV's then-attorney, Ronald Kopp, Esq., to Ronald's then-attorney Peter Nealis, Esq. demanding return of all ASAV property in Ronald's possession is attached hereto as **Exhibit J**.

32. Ronald did not return his company-issued laptop or cell phone in response to this demand.

33. On May 8, 2020, ASAV's counsel formally instructed Ronald's counsel to instruct his client to preserve all relevant information in anticipation of litigation. A true and accurate copy of this correspondence is attached hereto as **Exhibit K**.

34. On June 30, 2020, Ronald filed a civil complaint against ASAV, Baxter Property Management, LLC ("BPM"), and myself in the Summit County Court of Common Pleas. I, along with ASAV, BPM, and Securicom, filed counterclaims against Ronald, as well as Zenith and Ronald's wife, Andrea, on July 14, 2020.

35. On September 4, 2020, my counsel served Interrogatories, Requests for Production, and Requests for Admission on Ronald. Ronald's responses were served on October 30, 2020. A true and accurate copy of Ronald's responses to my Requests for Admission is attached hereto as **Exhibit L**.

36. In pertinent part, Ronald's response to my Request for Admission No. 27 claimed that he could not admit or deny that he had deleted text messages on his ASAV issued cell phone that were sent between him and Greg Geis, President of Geis Construction.

37. Ronald also admitted, in response to my Request for Admission Nos. 32-33, that he was still in possession of his ASAV issued cell phone and laptop, and that these devices were "waiting" for ASAV to "claim" them in the Securicom van sitting in the driveway of Ronald's home.

38. ASAV reasonably and appropriately construed this response as an invitation to retrieve the van (and its contents), which ASAV and its employees attempted to do on November 5, 2020. However, the van was locked, and after ASAV attempted to retrieve the vehicle (and its contents) with a tow truck, Ronald's wife Andrea called the police. As a result, our attempt to retrieve the van was unsuccessful.

39. ASAV was subsequently able to retrieve the van and its contents from Ronald's driveway on November 13, 2020.

40. After Ronald's company issued laptop and cell phone were recovered from the van and returned to ASAV, I instructed my IT providers at Integrated IT in Twinsburg, Ohio to search the devices for electronically stored information that would need to be reviewed by my attorneys in connection with this litigation. Former Integrated IT employee Daniel Young assisted me in this process.

41. When Mr. Young and I accessed the devices, we discovered that both the cell phone and laptop were devoid of any accessible user data. With respect to the computer specifically, we found that the Samsung hard drive that (according to the manufacturer specifications from Dell) was originally installed on the device when it was purchased by ASAV in March 2016 was no longer installed and that a SanDisc Hard drive was now installed on the

computer. We also discovered that a different version of Windows 8 had been installed on November 19, 2019 – over two months after ASAV's prior attorneys had instructed Ronald to stop using and to return his ASAV issued laptop and computer. This is confirmed by the following data from the laptop hard drive, taken from a screenshot I captured with Mr. Young when examining the laptop in November 2020:



42. As indicated in this screenshot, a new operating system was installed on the laptop – with the registered owned identified as "rbaxter" – on November 19, 2019.

43. To my knowledge, no one other than Ronald himself possessed his ASAV issued cell phone and laptop at any point between the time Ronald left the company in May 2019 and when ASAV finally retrieved the devices in November 2020.

44. ASAV's attorneys sent correspondence to Ronald's lawyers on November 13, 2020 informing them that the devices we recovered from Ronald's home contained no accessible user data and advising that we intended to amend our Counterclaim and seek sanctions for spoliation of evidence. A true and accurate copy of this letter is attached hereto as **Exhibit M**.

45. To my knowledge, Ronald's attorneys never responded to this correspondence.

46. Despite engaging the services of IT professionals, ASAV and Securicom have been unable to recover any of the information previously contained on Ronald's company-issued laptop, including but not limited to metadata showing when or how material on the laptop was altered or disclosed to third parties.

47. Similarly, ASAV and Securicom have been unable to recover any of the text messages or other media contained on Ronald's company-issued cell phone.

48. We have been able to obtain – through ASAV's cell phone service provider, AT&T – a log of all text messages sent and received by Ronald between September 5, 2019 (the date ASAV's attorneys first instructed Ronald to stop using and to return his company issued laptop and cell phone) and the date ASAV disconnected service to Ronald's company-issued phone in December 2019. True and accurate copies of these logs for September-October 2019, October-November 2019, and November-December 2019 are attached hereto as **Exhibit N**, **Exhibit O**, and **Exhibit P**, respectively.

49. These logs indicate that Ronald used his company-issued cell phone to send and receive approximately **378** text and other media messages *after* ASAV demanded that he

discontinue use of and return his company-issued phone on September 5, 2019. However, the logs do not provide any information about the context of those messages.

50. In addition to the aforementioned text messages, we have received logs from AT&T showing that Ronald made hundreds of data transfers from his ASAV-issued cell phone between September and December 2019. True and accurate copies of these logs are attached hereto as **Exhibit Q**, **Exhibit R**, and **Exhibit S**, respectively.

51. In particular, these logs show that that Ronald made two sizeable data transfers from his ASAV cell phone on the night of November 18, 2019, which is the night *before* Ronald was originally supposed to deliver his company cell phone and computer to his attorney for surrender to ASAV. *See* **Exhibit H** (11/18/19 email from P. Nealis to T. Link). As shown on the log attached hereto as **Exhibit S**, Ronald transferred a total of 154,985 KB from his ASAV-issued cell phone the shortly after 8:00 p.m. on November 18, 2019:

| 18-Nov-19 | 20:21 | Data Transfer | Domestic | $0.00 | KB | 16744 KB | AT | GPRR |
| 18-Nov-19 | 20:17 | Data Transfer | Domestic | $0.00 | KB | 138241 KB | AT | GPRR |

52. This is particularly concerning to me, since Ronald had been working for one of our competitors (Zenith) for over two months at the time this transfer was made.

53. As a result of Ronald taking action to delete or destroy information on his ASAV issued cell phone and laptop computer, ASAV, Securicom, and I have been unable to obtain the following categories of relevant information:

      a. Text messages exchanged by Ronald with ASAV clients (including Geis Construction) during a critical period in which Ronald was secretly communicating with Geis shortly before Geis terminated its business relationship with ASAV and Ronald resigned as an ASAV employee;

      b. All text messages sent and received by Ronald in the weeks leading up to his creation of a new audio-visual company, CSI, on June 13, 2019 and his acceptance of an offer of employment from ASAV competitor Zenith Systems, LLC on August 30, 2019;

  c. Hundreds of text messages sent and received by Ronald on his ASAV-issued cell phone after ASAV's legal counsel instructed Ronald to stop using and return this device (as well as his ASAV computer) on September 5, 2019;

  d. Over 154,985 KB worth of data transfers sent and received by Ronald via his ASAV-issued cell phone after September 5, 2019;

  e. All metadata contained on Ronald's ASAV-issued computer related to Ronald's use and disclosure of ASAV's confidential and trade secret programs and data contained on that device, including the company's customer lists (with customer phone numbers and email addresses), customer contracts (with associated service fees, installation costs, materials lists, invoices, payment histories, payment methods, credit terms, and contract renewal dates), software programs licensed to ASAV, confidential programming information for customer systems, lists of company vendors, the company's credit terms, material costs, labor costs, pricing structure methods, marketing strategies, and bidding formulas and computations.

54. This list is by no means exhaustive, and I fully anticipate that other categories of highly relevant information has been destroyed; unfortunately, and without access to that data, there is no way of knowing the extent to which ASAV, Securicom, and I have been prejudiced by Ronald's actions.

55. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Frank Baxter

2/11/22
Date