

EXHIBIT A
Page 1 of 4

## American Security & Audio Video Systems, Inc.
50 East Highland Road, Northfield, OH 44067 (330) 468-3366

### EMPLOYMENT AGREEMENT

**THIS AGREEMENT**, entered into by and between American Security & Audio Video Systems, Inc. and having its principle place of business at 50 East Highland Road, Northfield, Ohio 44067, and hereinafter known as "Employer" and Ronnie Baxter residing at 9400 Olde Eight Rd, Northfield, OH 44067, Telephone (330) 908-1735, hereinafter known as the "Employee";

WHEREAS, the Employer is engaged in the business of manufacturing, fabricating, merchandising, selling, distributing, installing, servicing, repairing and monitoring electronic systems, including, BUT NOT LIMITED TO: burglary, fire and intrusion protective and detection systems and devices, emergency notification systems, closed circuit and television systems, communication systems, central cleaning systems, access systems, sound systems, stereo system, home theater/audio video systems; for residential, commercial, industrial and government applications presently in Northeastern Ohio and expanding into other territories, and has expended large sums of money to build and establish a valuable distribution, sales, servicing, installation and monitoring business in these specialized fields and the clerical and administrative support structure therefore; and

WHEREAS, Employee acknowledges that in the course of Employee's term with Employer, Employee will have access to Employer's records including both confidential and secret, and that Employer thereby is entitled to protection with respect thereto; and

WHEREAS, catastrophic financial loss and damage will, with all certainty, be incurred by the Employer, if during the term of Employee's employment by the Employer or upon termination thereof, the Employee, either for himself/herself or on behalf of any person, entity or corporation by whom Employee may be employed or associated with, should solicit, service, sell, maintain, monitor or repair any protective device, detection system, or other products and services sold, rented, leased, installed, serviced and maintained or monitored by the Employer in the above marketing area and most especially to customers assigned to and covered by the Employee during his/her employment by the Employer.

NOW, THEREFORE, for valuable consideration, receipt of which is hereby acknowledged, it is mutually agreed by the parties hereto as follows:

1) That the Employer employs the Employee and the Employee accepts said employment to support the business operations of the Employer or any assignees, affiliates, subsidiaries, corporations, or corporations affiliated with Employer and to which Employer may assign Employee from time to time.

    A.    This Agreement and the employment hereinunder shall commence on <u>December 14, 2011,</u> and continue until terminated as herein provided for.

    B.    That for said services, the Employee will receive compensation to be agreed upon between the Employer and Employee prior to signing of this Agreement. During the term of this Agreement, the Employer may at its discretion readjust the compensation payable to Employee under this Agreement.

    C.    The Employee covenants and agrees that Employee will at all times faithfully and industriously perform all of the duties incumbent upon him/her as a result of this employment.

D. The Employee agrees not to divulge any information about Employer, the Employer's operations, the Employer's customers, the Employer's marketing policies, the Employer's installation policies, or the Employer's monitoring or service policies.

E. Employee further agrees that each and every of the covenants of the Employee is made for the protection of the goodwill and business that may be acquired throughout the territories of the Employer, and in consideration of Employee's compensation and this Agreement and from the time this Agreement commences until termination thereof, Employee shall communicate and channel to Employer all knowledge, business and customer contacts and any other matters of information which could concern or be in any way beneficial to the business of Employer, weather acquired by Employee before or during the term of this Agreement; provided, however, that nothing hereunder shall be construed as requiring such communications where the information is lawfully protected from disclosure as a trade secret of a third party. Any such information communicated to Employer as aforesaid shall be and remain the property of Employer, notwithstanding the subsequent termination of this Agreement.

F. The Employee covenants not to reveal any trade secrets, inventions or knowledge or information which Employee shall have acquired during his/her term of employment respecting the business of the Employer and shall hold all of the aforesaid information in trust and in a fiduciary capacity for the sole benefit of the Employer, its successors or assigns; and the Employee agrees not to divulge or publish or authorize anyone else to divulge or publish either during the term of his/her employment or thereafter, any knowledge of said pertinent customer lists, inventions or any technical or other information acquired during the course of his/her employment under this Agreement, or any confidential information concerning the Employer's business that may be acquired.

G. The Employee shall not independently or as an employee, engage in the business of selling, engineering, designing, installing, servicing, maintaining and/or monitoring of electronic systems including; security systems, fire systems, access control systems, closed circuit television systems, remote video systems, stereo systems, home theater/audio video systems, central cleaning systems, internet systems, telephone systems, intercom systems, structured cabling systems, computer systems and network systems for residential, commercial, industrial and governmental applications, customers and subscribers anywhere throughout the territories of Cuyahoga, Summit, Lake, Geauga, Lorain, Medina, Portage, Stark, Trumbull, Ashtabula and Mahoning counties, or induce or endeavor to induce, directly or indirectly, an employee or other agent of Employer to leave such employment or agency during the term of this Agreement.

H. The parties hereto agree that unless otherwise provided for, this Agreement shall be in force during the continued employment of the Employee by the Employer, and all the covenants relating to the Employee's noncompete and solicitations of the Employer's customers and employees shall remain in force for and until employee is no longer employed by company, and no longer a shareholder, plus a period of eighty four (84) months subsequent to the sale and/or termination and/or resignation of said employment stockholder relationship.

I. Because of the nature of Employer's business and the knowledge which Employee has acquired about it, Employee hereby agrees that for violation of any of the provisions of this Agreement, Employer shall, in addition to any other rights and remedies available hereunder, at law or otherwise, be entitled to an injunction to be issued by any court of competent jurisdiction enjoining and restraining Employee from committing any violation of this Agreement, and Employee hereby consents to the issuance of such injunction.

2) Because of the nature of the Employer's business and in the interest of safety for all concerned, the Employee agrees to submit to a Polygraph Test, a Security Investigation and/or blood, urine or other diagnostic test to detect alcohol and/or drug (or drug metabolites) in his/her system at any time requested by the Employer and as further agreed to in the Employer's "Pre-Employment Drug Testing Consent Form".  An employee, whether on probation or not, who refuses to submit to testing shall be subject to immediate discharge.  Employee understands that the results of any such tests will become a part of his/her record.  Employee clearly understands that all telephone lines, computer, internet, networks, and equipment owned, leased or used by Employer are for the sole purpose of conducting the Employer's business and their use is being or is subject to being monitored, tape recorded, read and/or deleted from time to time.  Employee understands that some or all of such recorded conversations or internet traffic may be reviewed by Employer's management personnel for the purpose of evaluating Employer's security procedures and to assess the quality of service rendered to customers and leads.  Employer will not and cannot assure Employee that personal communications which Employee makes or receives on Employer's equipment will be or will not be recorded, read, or deleted.  Employee enters into and continues his/her employment with Employer clearly understanding this and irrevocably gives his/her full consent and permission to Employer to monitor, record, read, and/or delete his/her telephone conversations, internet and email traffic, and waives all claims or rights to privacy while using such equipment and releases and discharge Employer, its employees, agents and assigns from all claims, demands or causes of action what so ever that now exist or may here after occur as a result of the monitoring, tape recording and review described above.

3) Employee agrees that Employer shall have the right to determine, in any dispute arising between said Employee and any other Employee of Employer, the right to compensation or commission on any sale, installation, service or other work performed, and Employee further agrees to abide by and be bound by Employer's decision.

4) The Employee agrees that any property of Employer received by Employee during the term of his/her employment shall be held by Employee for the account of Employer, and on termination or on request, such property shall be returned to Employer in as good condition as when received by Employee, ordinary wear and tear excepted.  All records or papers of any kind relating to Employer's business shall be the property of Employer, and shall be surrendered to Employer on demand.

5) Should the Employer from time to time advance or loan to or for the benefit of said Employee any sum or sums of money or other thing of value, said Employee agrees that any such sum or equivalent dollar-for-dollar value of non money advances, loans or property not returned to Employer as required by Paragraph 4, shall be charged to his /her payroll or commission account, and Employee further agrees that all or any part of the compensation that may be due and payable to said Employee from Employer shall be deducted first from said account charges and applied by said Employer toward payment of and reduction of said Employee's advances, loans or non returned property, and upon a final account stated if Employee is in arrears to Employer, said Employee agrees to pay all outstanding balances immediately.  Employee agrees that all objections to statements of account rendered by Employer are waived unless written notice thereof is given by Employee and reaches Employer within TEN (10) days after rendition of the statement by Employer.  On termination of this Agreement, Employer shall proceed in the customary manner to collect notes and open accounts for purchases of products or services sold by Employee and shall charge against Employee's account the compensation or commission previously credited on such accounts of notes and accounts as are uncollected.  Employer also shall charge Employee's account with Employer's portion of any collection expense.  This provision shall continue in force until Employee's final account can be stated and no money shall be due Employee under this Agreement after its termination until such final account is collected.

6) The parties hereto agree that this Agreement of employment may be terminated by either party immediately upon notice to the other party. Such termination may be without cause and pursuant to the laws of the State of Ohio. This Agreement may not be amended nor any rights hereunder be waived except by an instrument in writing signed by the party sought to be charged with such amendment or waiver. No course of dealing between or among any persons having any interest in this Agreement will be deemed effective to modify, amend or discharge any part of this Agreement or any rights or obligations of any person under or by reason of this Agreement.

7) This Agreement constitutes the full and complete understanding and agreement of the parties, supersedes all prior understandings and agreements, and may not be changed or terminated orally.

8) Because of the Nature of Employer's business and in the interest of security and safety for all concerned, I, the undersigned Employee, agree to submit to a Polygraph Test, a Security Investigation and/or blood, urine or other diagnostic test to detect alcohol and/or drug (or drug metabolites) in my system at any time requested by the Employer. I understand that the results of any such tests will become a part of my record. I clearly understand that all telephone lines and equipment owned, leased or used by Employer are for the sole purpose of conducting the Employer's business and their use is being or is subject to being monitored and/or tape recorded from time to time. I understand that some or all such recorded conversations may be reviewed by Employer's management personnel for the purpose of evaluating Employer's security procedures and to assess the quality of service rendered to customers and leads. Employer will not and cannot assure me that personal telephone conversations which I make or receive on Employer's equipment will be or will not be tape recorded. I enter into and continue my employment with Employer clearly understanding this and irrevocably give my full consent and permission to Employer to monitor and/or record my telephone conversations, and waive all claims or rights to privacy while using such equipment and release and discharge Employer, its employees, Employees, and assigns from all claims, demands or causes of action what so ever that now exist or may here after accrue as a result of the monitoring, tape recording and review described above.

In WITNESS WHEREOF, The Employer has caused these presents to be signed and sealed on it's behalf by it's duly authorized offices; and the Employee has hereunto set his/her hand this 14 day of December, 2011. By signing this Agreement, the Employee agrees to be bound by the terms thereunder.

_____  _____
Vice President            President